Benjamin W. Reeves (#025708)
James G. Florentine (#034058)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2202
Telephone: (602) 382-6506
Email: breeves@swlaw.com
         jflorentine@swlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BHPH CAPITAL, LLC, a Delaware limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>KUT AUTO FINANCE, LLC, an Alabama limited liability company; NATHANIEL SYME, an individual,<br><br>  Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

BHPH Capital, LCC ("BHPH" or "Plaintiff"), for its Complaint against Defendants KUT Auto Finance, LLC ("KUT" or "Borrower"), Nathaniel Syme ("Syme" or "Guarantor", and together with KUT, the "Defendants"), hereby alleges, states, and avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff BHPH is a Delaware limited liability company that is authorized to do business, and is doing business, in Arizona. None of Plaintiff's ultimate members are citizens of Alabama.

2. Defendant KUT is an Alabama limited liability company and Alabama citizen for the purposes of diversity jurisdiction.

3. KUT consented to the nonexclusive jurisdiction of federal or state courts in Maricopa County, Arizona. *See* Loan Agreement (as defined below) at ¶ 23.

4. KUT's sole manager and member is Syme.

4884-2170-9348

5. Defendant Syme is an individual residing in Alabama and is an Alabama citizen for the purposes of diversity jurisdiction.

6. Defendant Guarantor consented to the nonexclusive jurisdiction of the federal or state courts in Maricopa County, Arizona. *See* Guaranty (as defined below) at ¶ 19.

7. Borrower and Guarantor contracted to pay a debt in Maricopa County, Arizona.

8. This Court thus has personal jurisdiction over Borrow and Guarantor.

9. The amount in controversy in this civil action exceeds $75,000.

10. There is complete diversity among the parties to this civil action. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

11. Venue in this Court is proper under 28 U.S.C. § 1391 because Borrower and Guarantor agreed in the Loan Agreement and Guaranty that venue is proper in this Court. *See* Loan Agreement at ¶ 23; Guaranty at ¶¶ 16-19. And, Borrower and Guarantor contracted to pay a debt in Maricopa County, Arizona.

12. Venue is also proper in this Court pursuant to A.R.S. § 12-401(1).

## THE LOAN DOCUMENTS

13. On or about November 3, 2021, BHPH, as lender, and KUT, as borrower, entered into that certain "Loan and Security Agreement" (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1.

14. Pursuant to the Loan Agreement, BHPH agreed to make certain loans (the "Loans") to KUT in the maximum principal amount of $750,000 on the terms set forth in the Loan Agreement. *See* Ex. 1.

15. Also pursuant to the Loan Agreement and as set forth in further detail in the Loan Agreement, BHPH's loans to KUT are secured by substantially all of KUT's assets (collectively, the "Collateral"). *See* Ex. 1.

2

4884-2170-9348

16.     BHPH's security interest in the Collateral is further evidenced by that certain "UCC Financing Statement" filed with the Alabama Secretary of State's Office on April 25, 2022 at UCC filing no. 22-7237013 (the "UCC-1 Statement").  A true and correct copy of the UCC-1 Statement is attached hereto as Exhibit 2.

17.     To further evidence the Loans, BHPH, as lender, and KUT, as borrower, also entered into that certain "Promissory Note" dated November 3, 2021 in the maximum principal amount of $750,000. (the "Promissory Note").  A true and correct copy of the Promissory Note is attached hereto as Exhibit 3.

18.     Also on or about November 3, 2021, Guarantor executed that certain "Guaranty Agreement" dated November 3, 2021 in favor of BHPH (the "Guaranty").  A true and correct copy of the Guaranty is attached hereto as Exhibit 4.

19.     Pursuant to the Guaranty, Guarantor, among other things, "unconditionally and irrevocably guarantees to Lender punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Obligations."  *See* Ex. 4 at § 2.

20.     The Loan Agreement, Promissory Note, Guaranty, and other documents related to the Loan Agreement, including but not limited to all addendums to the Loan Agreement are collectively referred to herein as the "Loan Documents."

## KUT'S FRAUD AND BREACHES OF THE LOAN DOCUMENTS

21.     Beginning in 2021, KUT and Guarantor breached the Loan Documents.

22.     For example, § 7(a) of the Loan Agreement and the Promissory Note requires KUT to pay the Indebtedness (as defined in the Loan Agreement) when due.  *See* Ex. 1 at § 7(a); *see also* Ex. 3.

23.     KUT has failed to pay the Indebtedness when due and thus breached the Loan Documents.

24.     More specifically, to date, KUT has failed to pay BHPH (i) the Overadvance, which is at a minimum, $389,800.11, plus all accrued and unpaid interest thereon, which is

3

at a minimum, $403,395.45, which continues to accrue at the default rate 18% per annum until paid in full, and (ii) the 5% late fee provided in the Promissory Note, which is at a minimum, $20,169.77.

25. In addition, § 5(b) of the Loan Agreement provides that KUT shall provide BHPH "all Sales Contracts, including all Qualified Collateral, [and] accompanying motor vehicle titles." *See* Ex. 1 at § 5(b).

26. KUT breached § 5(b) of the Loan Agreement by failing and refusing to deliver all vehicle titles for the retail sales contracts that BHPH financed to BHPH and/or provide all other Collateral as required by the Loan Documents.

27. In fact, BHPH has been informed that KUT illegally requested that the Alabama department of motor vehicles re-issue clean titles of certain collateralized vehicles directly to KUT despite KUT's obligations under the Loan Documents that all such titles be held in BHPH's name.

28. Additionally, § 11(c) of the Loan Agreement provides that BHPH shall have access to KUT's DMS systems.

29. KUT breached § 11(c) of the Loan Agreement by improperly restricting BHPH's access to KUT's DMS systems.

30. Moreover, § 12 of the Loan Agreement provides, in relevant part, that KUT shall provide BHPH access to, and direct payments to, certain specified payment accounts. *See* Ex. 1 at § 12.

31. KUT breached § 12 of the Loan Agreement by improperly diverting its payment streams away from BHPH.

32. In addition, between February 10, 2022 and February 24, 2022, KUT, through Guarantor—in order to induce BHPH to lend it at least an additional $125,000.00 under the Loan Documents—represented to BHPH in text messages and phone calls that (i) KUT was in good standing under the Loan Documents, and (ii) KUT required additional funds to satisfy certain floorplan obligations.

4

33. Defendants' representations were false when made because KUT was not in good standing under the Loan Documents at the time of their representations.

34. Specifically, KUT was not in good standing under the Loan Documents because unbeknownst to Plaintiff, KUT—among other things: (i) had applied for lost titles from the state of Alabama for titles that BHPH had in its possession as Collateral, (ii) had rerouted its merchant payments to another bank, (iii) was not depositing cash payments as required under the Loan Documents, (iv) had removed BHPH's access to KUT's Dealer Management System ("DMS"), (v) was not providing BHPH with insurance documentation as required under the Loan Documents, and (vi) had failed to provide titles to BHPH.

35. Defendants' representations were also false when made because, upon information belief, KUT did not intend to use the additional funds Defendants requested from BHPH to satisfy its floorplan obligations.

36. Defendants' representations were material because it induced BHPH to lend, among other amounts, an additional $125,000.00 to KUT in or around February 24, 2022.

37. At the time of Defendants' representations, Defendants knew that their representations were false.

38. Defendants, however, intended that BHPH would rely on the afore-described representations when determining whether to make, among other advances, the additional $125,000.00 loan under the Loan Documents to KUT.

39. At the time of Defendants' representation, BHPH did not know that Defendants' representation was false.

40. BHPH relied on, and had the right to rely on, Defendants' representations described-above when determining whether to make, among other advances, the additional $125,000.00 loan to KUT.

41. BHPH would never had made, among other advances, the additional $125,000.00 loan to KUT if it knew that Defendants' representations were false.

5

## GUARANTOR'S BREACH OF THE GUARANTY

42. Section 2 of the Guaranty provides, in relevant part, that Guarantor "unconditionally and irrevocably guarantees to Lender punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Obligations." *See* Ex. 4 at § 2.

43. Guarantor breached, at a minimum, § 2 of the Guaranty by failing to pay the Indebtedness when due.

## BHPH'S DEMAND FOR KUT'S AND GUARANTOR'S CURE OF THE DEFAULTS UNDER THE LOAN DOCUMENTS

44. On June 6, 2022, BHPH provided written notice to KUT and Guarantor of their afore-described defaults under the Loan Documents (the "Notice of Default"). A true and correct copy of the Notice of Default is attached hereto as Exhibit 5.

45. In the Notice of Default, BHPH requested that KUT and Guarantor cure their monetary breaches of the Loan Documents on or before June 9, 2022. *See* Ex. 5.

46. KUT and Guarantor failed to pay the Indebtedness on or before June 9, 2022 and thus are in default under the Loan Documents.

47. In the Notice of Default, BHPH also requested that KUT cure its non-monetary breaches of the Loan Documents (i.e., its breaches of, among other things, sections 5(b), 11(c), and 12 of the Loan Agreement) on or before June 21, 2022. *See* Ex. 5.

48. KUT did not cure its non-monetary breaches of the Loan Documents on or before June 21, 2022.

49. In addition to the foregoing defaults under the Loan Documents, KUT is also in default of the Loan Documents because BHPH in good faith believes itself to be insecure under the Loan Documents as a result of KUT's serial-breaches of the Loan Documents. *See* Ex. 5.

## COUNT I

### (Breach of Loan Documents)

### (BHPH against KUT)

50. BHPH realleges and reincorporates by reference all preceding allegations contained in the Complaint.

51. BHPH and KUT entered into the Loan Documents.

52. KUT breached the Loan Documents by, among other things, failing to pay the Indebtedness when due and despite BHPH's demand for payment.

53. KUT further breached the Loan Documents by, among other things, (i) failing and refusing to deliver all vehicle titles for the retail sales contracts that BHPH financed to BHPH and/or provide all other Collateral as required by the Loan Documents, (ii) improperly restricting BHPH's access to KUT's DMS systems, and (iii) improperly diverting its payment streams away from BHPH.

54. KUT is also in default under the Loan Documents because BHPH in good faith believes itself to be insecure under the Loan Documents as a result of KUT's serial-breaches of the Loan Documents.

55. As a direct and proximate result of KUT's breaches of the Loan Documents, BHPH has been injured in an amount to be proven at trial, but in no event less than $423,565.22, plus accruing default interest, attorneys' fees and costs, all other fees and costs due and/or recoverable under the Loan Documents, and consequential damages in an amount to be proven at trial.

56. BHPH is entitled to an award of its attorneys' fees and costs pursuant to the Loan Documents and A.R.S. §§ 12-341 and 12-341.01.

4884-2170-9348

## COUNT II

**(Breach of Guaranty)**

**(BHPH against Guarantor)**

57. BHPH realleges and reincorporates by reference all preceding allegations contained in the Complaint.

58. Guarantor entered into the Guaranty with BHPH.

59. Pursuant to the Guaranty, Guarantor, among other things, "unconditionally and irrevocably guarantees to Lender punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and at all times thereafter, of the Guaranteed Obligations." *See* Ex. 4 at § 2.

60. Guarantor breached, at a minimum, § 2 of the Guaranty by failing to pay the Indebtedness when due and despite BHPH's demand for payment.

61. As a direct and proximate result of Guarantor's breach of the Guaranty, BHPH has been injured in an amount to be proven at trial, but in no event less than $423,565.22, plus accruing default interest, attorneys' fees and costs, all other fees and costs due and/or recoverable under the Loan Documents, and consequential damages in an amount to be proven at trial.

62. BHPH is entitled to an award of its attorneys' fees and costs pursuant to the Loan Documents and A.R.S. §§ 12-341 and 12-341.01.

## COUNT III

**(Fraud)**

**(BHPH against Defendants)**

63. BHPH realleges and reincorporates by reference all preceding allegations contained in the Complaint.

64. In addition, between February 10, 2022 and February 24, 2022 KUT, through Guarantor—in order to induce BHPH to lend it, among other amounts, an additional $125,000.00 under the Loan Documents—represented to BHPH in text messages and phone

8

calls that (i) KUT was in good standing under the Loan Documents and (ii) KUT required additional funds to satisfy certain floorplan obligations.

65. Defendants' representations were false when made because KUT was not in good standing under the Loan Documents at the time of their representations.

66. Specifically, KUT was not in good standing under the Loan Documents because KUT, among other things, (i) had applied for lost titles from the state of Alabama for titles that BHPH had in its possession as Collateral, (ii) had rerouted its merchant payments to another bank, (iii) was not depositing cash payments as required under the Loan Documents, (iv) had removed BHPH's access to KUT's DMS, (v) was not providing BHPH with insurance documentation as required under the Loan Documents, and (vi) had failed to provide titles to BHPH.

67. Defendants' representations were also false when made because, upon information belief, KUT did not intend to use the additional funds Defendants requested from BHPH to satisfy its floorplan obligations.

68. Defendants' representations were material because it induced BHPH to lend, among other amounts, an additional $125,000.00 to KUT in or around February 24, 2022.

69. At the time of Defendants' representations, Defendants knew that their representations were false.

70. Defendants, however, intended that BHPH would rely on the afore-described representations when determining whether to make, among other advances, the additional $125,000.00 loan under the Loan Documents to KUT.

71. At the time of Defendants' representations, BHPH did not know that Defendants' representations were false.

72. BHPH relied on, and had the right to rely on, Defendants' representations described-above when determining whether to make, among other advances, the additional $125,000.00 loan to KUT.

9

73. As a consequent and proximate cause of Defendants' representations, BHPH because BHPH would never had made, among other advances, the additional $125,000.00 loan to KUT if it knew that Defendants' representations were false.

74. Defendants' actions described above were done with malice, ill will, and/or a deliberate intent to injure BHPH and thus BHPH is entitled to an award of punitive damages.

75. BHPH is entitled to an award of its attorneys' fees and costs pursuant to the Loan Documents and A.R.S. §§ 12-341 and 12-341.01.

## COUNT IV

### (Appointment of a Receiver)

### (BHPH against KUT)

76. BHPH realleges and reincorporates all preceding allegations contained in the Complaint.

77. As a result of KUT's monetary and non-monetary breaches of the Loan Documents described above, KUT is in default under the Loan Documents.

78. Section 14(b)(vii) of the Loan Agreement provides that "[u]pon the occurrence of any one or more of the foregoing Events of Default, [BHPH] may from time to time at its discretion. . . . Apply for the appointment of a receiver for the Collateral, and [KUT] hereby consents to any such appointment." *See* Ex. 1 at § 14(b)(vii).

79. Rule 66, Fed. R. Civ. P., authorizes BHPH to apply to this Court for the appointment of a receiver to protect and preserve its interest in the Collateral.

80. Leaving the Collateral in KUT's control places BHPH's secured interests in the Collateral in jeopardy. For example, KUT has already illegally requested that the Alabama department of motor vehicles re-issue clean titles of certain collateralized vehicles directly to KUT despite KUT's obligations under the Loan Documents.

**WHEREFORE**, BHPH pray for judgment against Defendants as follows:

    a.    For judgment against KUT for KUT's breach of the Loan Documents

in the amount of no less than $423,565.22 in principal, plus accruing default interest, attorneys' fees and costs, all other fees and costs due under the Loan Documents;

b.   For judgment against Guarantor for Guarantor's breach of the Loan Documents in the amount of no less than $423,565.22 in principal, plus accruing default interest, attorneys' fees and costs, all other fees and costs due under the Loan Documents;

c.   For judgment against Defendants for fraud in an amount to be proven at trial;

d.   For an award of damages in an amount to be proven at trial, including but not limited consequential and punitive damages;

e.   For entry of an order appointing a receiver over the Collateral in the form that will be submitted to the Court;

f.   For an award of attorneys' fees and costs pursuant to the Loan Documents and/or A.R.S. §§ 12-341 and 12-341.01; and

g.   For such other and further relief as this Court may deem just and equitable.

RESPECTFULLY SUBMITTED this 29th day of June, 2022.

                    SNELL & WILMER L.L.P.

                    By: */s/ James G. Florentine*
                        Benjamin W. Reeves
                        James G. Florentine
                        One Arizona Center
                        400 E. Van Buren St., Ste. 1900
                        Phoenix, AZ  85004-2202
                        Attorneys for Plaintiff

4884-2170-9348

## VERIFICATION

I, Daniel Serpe, being first duly sworn upon my oath, state as follows:

That I am the Chief Executive Officer of Plaintiff BHPH Capital, LLC. I have read the foregoing Verified Complaint and know the contents thereof, and state that I know that the allegations are true, except the matters stated therein on information and belief, and that as to those matters, I believe the complaint to be true.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 27th day of June, 2022.

*/s/ Daniel Serpe, CEO*

Daniel Serpe